**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MYASIA LOPEZ, on behalf of herself and all others similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> CREDIT UNION OF NEW JERSEY, <br><br> *Defendant.* | Civil Action No. 23-2659 <br><br> CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiff Myasia Lopez, individually and on behalf of all others similarly situated, brings this class action complaint against Defendant Credit Union of New Jersey based upon personal knowledge with respect to herself and on information and belief and the investigation of counsel as to all other matters, in support thereof alleging as follows:

## I.    INTRODUCTION

1.    This class action against defendant Credit Union of New Jersey ("CUNJ") arises from its practice of assessing unfair and/or unauthorized "Courtesy Pay Fees," *i.e.*, overdraft fees, that violate federal and New Jersey law.

2.    CUNJ's overdraft practices are unfair and deceptive because it assesses overdraft fees even when its members' accounts are not overdrawn.

3.    Moreover, in some instances, CUNJ imposes unauthorized overdraft fees because it fails to obtain its members' affirmative consent to charge overdraft fees on ATM and one-time debit card transactions as required by Regulation E of the federal Electronic Funds Transfer Act ("EFTA").

4.      Plaintiff brings this action on behalf of herself and other past and present CUNJ members harmed by its overdraft practices for damages, restitution, and injunctive relief.

## II.      JURISDICTION AND VENUE

5.      The jurisdiction of this Court arises under 15 U.S.C. § 1693m(g) and 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims under 28 U.S.C. § 1367.

6.      This Court has personal jurisdiction over the Defendant because Defendant maintains its principal place of business in this district.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district and because Defendant maintains its principal place of business in this district.

## III.      PARTIES

8.      Plaintiff Myasia Lopez is a resident of Riverside, New Jersey. At all relevant times, Plaintiff was a member of CUNJ and had one or more accounts subject to CUNJ's overdraft practices.

9.      Defendant CUNJ is a federal credit union with its principal place of business in Ewing, New Jersey. Among other things, CUNJ is engaged in the business of providing retail banking services to consumers.

## IV.    FACTUAL ALLEGATIONS

A.    Overdraft Fees and Related Regulation

10.    According to the Consumer Financial Protection Bureau ("CFPB"), "[o]verdraft programs on checking accounts have evolved from a manual courtesy program to an automated feature that today generates a significant share of financial institutions' revenue from deposit accounts."[1]

11.    According to figures compiled by the CFPB, the top five national banks reported more than $5 billion in overdraft/NSF revenue in 2021, namely Wells Fargo Bank, N.A. ($1.414 billion); JP Morgan Chase Bank, N.A. ($1.211 billion); Bank of America, N.A. ($1.135 billion); TD Bank, N.A. ($477 million); and Truist Bank ($415 million).[2]

12.    Some banks limit the number of overdraft fees that they will assess against customers' accounts on a given day. These include PNC Bank, N.A. (1); Manufacturers and Traders Trust Company (1); and First National Bank Texas DBA First Convenience Bank (2). Many others limit the number of fees to 3 each day.[3]

13.    At least one national bank, USAA Federal Savings Bank, does not assess overdraft fees on any transactions.[4]

---

[1]    CONSUMER FINANCIAL PROTECTION BUREAU, *Consumer Financial Protection Bureau Study of Overdraft Programs: A white paper of initial data findings*, June 11, 2013, *available at* https://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf.

[2]    CONSUMER FINANCIAL PROTECTION BUREAU, *Overdraft/NSF metrics for Top 20 banks based on overdraft/NSF revenue reported during 2021*, Dec. 2022, at 1-2, *available at* https://files.consumerfinance.gov/f/documents/cfpb_overdraft-chart_2023-02.pdf.

[3]    *See generally id.*

[4]    *Id.* at 2.

14.     Two more national banks, Citibank, N.A. and Capital One Bank, N.A., have announced that they will cease assessing overdraft fees altogether.[5]

15.     In the course of its examinations of financial institutions that offer overdraft services, the CFPB found that many institutions calculate the balance of consumers' accounts for the purpose of assessing overdraft fees using an "available-balance" method, which "calculates an account's balance based on electronic transactions that the institutions have authorized (and therefore are obligated to pay) but not yet settled, along with settled transactions," instead of a "ledger-balance" method, which "factors in only settled transactions in calculating an account's balance[.]"[6]

16.     The CFPB observed that, "in some instances, transactions that would not have resulted in an overdraft (or an overdraft fee) under a ledger-balance method did result in an overdraft (and an overdraft fee) under an available-balance method."[7]

17.     EFTA's implementing regulations, "Regulation E,"[8] prohibit financial institutions from assessing an overdraft fee on a consumer's account for paying an ATM or one-time debit card transaction pursuant to the financial institution's overdraft program unless the financial institution provides the customer with written notice, separate from all other information, that describes the institution's overdraft

---

[5]     *Id.* at 3.

[6]     CONSUMER FINANCIAL PROTECTION BUREAU, *Supervisory Highlights*, 8, Winter 2015, *available at* https://files.consumerfinance.gov/f/201503_cfpb_supervisory-highlights-winter-2015.pdf.

[7]     *Id.*

[8]     *See* 12 C.F.R. §§ 205.1-205.20 (as originally published by the Federal Reserve Board); 12 C.F.R. §§ 1005.1-1005.36 (as republished by the Consumer Financial Protection Bureau).

program, obtains the customer's affirmative consent to the institution's payment of ATM or one-time debit card transactions that would incur an overdraft fee, and provides written confirmation of the consumer's consent along with a statement informing the consumer of the right to revoke this consent.[9]

B.      CUNJ's Overdraft Policy

18.     At all relevant times, the terms of Plaintiff's relationship with CUNJ were governed by certain documents, which include but are not limited to, CUNJ's standardized "Membership and Account Agreement," a copy of which is attached as Exhibit A.

19.     The Membership and Account Agreement contains, at least in part, CUNJ's overdraft policy. *See* Ex. A at 3-4.

20.     Nowhere in the Membership and Account Agreement does CUNJ obligate itself to honor transactions that would result in the overdraft of a members' account. *See* Ex. A at 3 ("[i]f, on any day, the available balance in your share or deposit account is not sufficient to pay the full amount of a check, draft, transaction, or other item, plus any applicable fee, that is posted to your account, we *may* return the item or pay it[.]") (emphasis added); *id.* at 4 ("[I]f we exercise our right to use our discretion to pay such items that result in an insufficiency of funds in your account, we do not agree to pay them in the future and may discontinue coverage at any time without notice.").

---

9      12 C.F.R. § 1005.17(b).

21.    Irrespective of whether CUNJ pays or declines a transaction that would overdraw a member's account, it reserves the right to charge a fee. *Id*. at 3 ("Your account may be subject to a fee for each item regardless of whether we pay or return the item.").

22.    CUNJ states that "[w]e use your available balance to determine whether there are sufficient funds in your account to pay items, including checks and drafts, as well as ACH, debit card and other electronic transactions." Id. at 4.

23.    CUNJ defines "available balance" as:

[Y]our actual balance less: (1) holds placed on deposits; (2) holds on debit card or other transactions that have been authorized but are not yet posted; and (3) any other holds, such as holds related to pledges of account funds and minimum balance requirements or to comply with court orders.

*Id*. at 4.

24.    Although the Membership and Account Agreement purports to describe the order in which transactions post to members' checking accounts, *see id*. at 4, CUNJ "reserve[s] the right to pay items in any order we choose as permitted by law." *Id*.

25.    The Membership and Account Agreement further states that, "[f]or ATM and one-time debit card transactions, you must affirmatively consent to such coverage. Without your consent, the Credit Union may not authorize and pay an ATM or one-time debit card transaction that will result in insufficient funds in your account." *Id*. at 4.

26.    To seek its members' affirmative opt-in consent to its overdraft policy for ATM and one-time debit transactions as required by Regulation E, CUNJ uses a

an "Extended Coverage Consent Form" ("Consent Form"), a sample of which is attached as Exhibit B.

27.    In part, CUNJ's Consent Form states that "[a]n overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." Ex. B.

28.    CUNJ's Consent Form explains its "standard overdraft practices" as follows:

> ➤ What are the <u>standard overdraft practices</u> that come with my account?
>
>    We <u>do</u> authorize and pay overdrafts for the following types of transactions:
>
>    - Checks and other transactions made using your checking account number
>    - Automatic bill payments
>
>    We <u>will not</u> authorize and pay overdrafts for the following types of transactions without your consent.
>
>    - ATM transactions
>    - Everyday debit card transactions
>
>    We pay overdrafts at our discretion, which means we <u>do not guarantee</u> that we will always authorize and pay any type of transaction. If we do <u>not</u> authorize and pay an overdraft, your transaction will be declined.
>
> ➤ What fees will I be charged if Credit Union of New Jersey, A Federal Credit Union pays my overdraft?
>
>    Under our standard overdraft practices:
>
>    - We will charge you a fee of $30 each time we pay an overdraft
>    - There is no limit per day on the total fees we can charge you for overdrawing your account[.]

*Id.* (emphasis original).

29.    Nowhere in the Membership and Account Agreement or Consent Form does CUNJ disclose that an overdraft fee may be charged for transactions that do not overdraw an account.

30.    Nowhere in the Membership and Account Agreement or Consent Form does CUNJ disclose that an overdraft fee may be charged for ATM transactions and one-time debit card transactions without a member's affirmative, opt-in consent.

31.    In comparison to many of its competitors in the consumer banking industry, including the large national banks examined by the CFPB, CUNJ's overdraft policy is such that its members are more likely to be assessed an overdraft fee than customers of banks that do not charge such fees or refrain from charging multiple fees in a single day.

C.    CUNJ Assesses Unfair and Unauthorized Overdraft Fees

32.    Upon information and belief, CUNJ could program its systems to automatically decline transactions that would overdraw its members' checking accounts when presented.

33.    However, instead of declining such transactions, CUNJ has programmed its systems to honor them so it can assess its members an overdraft fee, which is currently $30.00 for each transaction, irrespective of the amount of the transaction it elects to pay.

34.    CUNJ does not limit the number of overdraft fees that it will assess on a given day.

35.     On information and belief, CUNJ intentionally authorizes and settles same-day transactions in a sequence intended to minimize the "available balance" in its members' accounts, thereby maximizing the potential for assessing overdraft fees.

36.     CUNJ makes substantial income from member fees, including overdraft fees. It reported fee income of $4,756,240 in 2018, $4,900,855 in 2019, $4,715,305 in 2020, $4,842,832 in 2021, and $5,036,252 in 2022.

D.     CUNJ Assesses Overdraft Fees on Plaintiff's Account

37.     At all relevant times, Plaintiff was a member of CUNJ and had, *inter alia*, a checking account and savings account with CUNJ.

38.     On November 14, 2019, even though funds sufficient to cover the $26.65 transaction in question were present in Plaintiff's account, namely $29.85, CUNJ charged Plaintiff a $30.00 overdraft fee.

39.     On December 23, 2019, even though funds sufficient to cover the $60 transaction in question were present in Plaintiff's account, namely $119.28, CUNJ charged Plaintiff a $30.00 overdraft fee.

40.     On May 4, 2022, even though funds sufficient to cover the $116.98 transaction in question were present in Plaintiff's account, namely $183.33, CUNJ charged Plaintiff a $30.00 overdraft fee. The next day, after Plaintiff complained about the fee, CUNJ reversed it and credited her account accordingly.

41.     On June 8, 2022, even though funds sufficient to cover the $100 transaction in question were present in Plaintiff's account, namely $292.29, CUNJ charged Plaintiff a $30.00 overdraft fee.

42.  On August 4, 2022, even though funds sufficient to cover the $116.98 transaction in question were present in Plaintiff's account, namely $157.22, CUNJ charged Plaintiff a $30.00 overdraft fee.

43.  On November 7, 2022, even though funds sufficient to cover the $10.65 ACH transaction in question were present in Plaintiff's account, namely $181.30, CUNJ charged Plaintiff a $30.00 overdraft fee.

44.  Again on November 7, 2022, even though funds sufficient to cover the additional $113.60 transaction in question were present in Plaintiff's account notwithstanding CUNJ's initial $30.00 overdraft fee, namely $140.65, CUNJ assessed an additional $30.00 overdraft fee.

45.  As a direct and proximate result of CUNJ's baseless overdraft fees, Plaintiff suffered the loss of at least $180.00 since November 2019.

46.  At no time did Plaintiff affirmatively opt-in to CUNJ's overdraft policy with respect to ATM and one-time debit card transactions.

47.  Nevertheless, notwithstanding having never obtained Plaintiff's affirmative opt-in consent to do so, CUNJ wrongfully charged Plaintiff $30.00 overdraft fees in connection with one-time debit transactions on October 24, 2021, March 28, 2022, August 4, 2022, and November 15, 2022.

48.  As a direct and proximate result of CUNJ's unauthorized overdraft fees, which it imposed despite the lack of Plaintiff's affirmative opt-in consent, Plaintiff suffered the loss of at least $120.00 since October 2021.

## V.  CLASS ALLEGATIONS

49.  Plaintiff brings this action on behalf of herself and the following classes:

### Class 1: The Sufficient Funds Class

From the date six years before the filing of this matter to the date of class certification, all current and former CUNJ members with an address in the United States and its territories whom CUNJ charged one or more overdraft fees when the transaction triggering the fee was not more than the settled balance of the account at the time CUNJ authorized the transaction.

### Subclass 1: The New Jersey Sufficient Funds Subclass

From the date six years before the filing of this matter to the date of class certification, all current and former CUNJ members with an address in the State of New Jersey whom CUNJ charged one or more overdraft fees when the transaction triggering the overdraft fee did not overdraw the settled balance of the account at the time CUNJ authorized the transaction.

### Class 2: The Unauthorized Overdraft Fees Class ("EFTA Class")

From the date one year before the filing of this matter to the date of class certification, all current and former CUNJ members with an address in the United States and its territories whom CUNJ charged one or more overdraft fees for an ATM transaction or debit card transaction and for whom CUNJ has no record of obtaining affirmative opt-in consent prior to assessing said overdraft fee(s).

50.  Except where otherwise indicated, the above classes and subclass are collectively referred to as the "Classes."

51.  Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

52.  Specifically excluded from the Classes are CUNJ, its parents, subsidiaries, affiliates, officers and directors, any entity in which CUNJ has a controlling interest, all members of the Classes who make a timely election to be

excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

53.    CUNJ has more than 37,000 members, making the members of the Classes so numerous that joinder is impractical. The Classes likely consist of thousands of individuals, who can only be identified by reference to CUNJ's records.

54.    Plaintiff's claims are typical of the claims of the Classes in that she, like all members of the Classes, was charged overdraft fees on transactions notwithstanding a positive settled balance in her checking account and notwithstanding CUNJ's failure to obtain her affirmative opt-in consent for ATM and one-time debit transactions. The representative plaintiff, like all members of the Classes, has been damaged by CUNJ's misconduct in that she was assessed—and paid—unfair and unauthorized overdraft fees. Furthermore, the factual basis of CUNJ's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other members of the Classes.

55.    There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes. The questions of law and fact common to the Classes include, but are not limited to, the following:

   a.    Whether CUNJ charged overdraft fees on transactions that did not overdraw the settled balance of the account;

       b.       Whether CUNJ breached its own contract by charging overdraft fees on transactions when those transactions did not overdraw the settled balance of the account;

       c.       Whether CUNJ's use of an available balance method of calculating members' account balances of the purposes of assessing overdraft fees is unfair, misleading, or deceptive;

       d.       Whether CUNJ obtained affirmative opt-in consent prior to assessing overdraft fees for ATM and one-time debit transactions; and

       e.       The proper measure of damages available to Plaintiff and the Classes.

56.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

57.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual class member's claim is small relative to the complexity of the litigation, no class member could afford to seek legal redress individually for the claims alleged herein against an entity with the financial resources of CUNJ. Therefore, absent a class action, the Classes will not be compensated, will continue to suffer losses, and CUNJ's misconduct will proceed without remedy.

58.     Even if members of the Classes themselves could afford it, such individual litigation would needlessly burden the court system. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard that might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

59.     Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff, like all members of the Classes, is at risk of additional overdraft fees on transactions that do not overdraw her account. Plaintiff and the members of the Classes are entitled to injunctive and declaratory relief because of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain CUNJ from continuing to commit its unfair and illegal actions.

60.     CUNJ has acted or refused to act on grounds applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

## VI.    CAUSE OF ACTION

COUNT I

Breach of Contract

(On Behalf of Plaintiff, the Sufficient Fund Class,
and the New Jersey Sufficient Fund Subclass)

61.    Plaintiff incorporates the above allegations by reference.

62.    Plaintiff and all members of the Sufficient Funds Class and New Jersey Sufficient Funds Subclass contracted with CUNJ for, *inter alia*, checking account and debit card services, the terms of which are set forth in the Membership and Account Agreement and the Consent Form.

63.    CUNJ breached promises made to Plaintiff and all members of the Sufficient Funds Class and New Jersey Sufficient Funds Subclass when, as described herein, CUNJ charged overdraft fees due to transactions that did not overdraw a checking account.

64.    Plaintiff and all members of the Sufficient Funds Class and New Jersey Sufficient Funds Subclass have performed all, or substantially all, of the obligations imposed on them under the contract.

65.    Plaintiff and members of the Sufficient Funds Class and New Jersey Sufficient Funds Subclass have sustained damages due to CUNJ's breach of contract.

66.    Defendant is liable to Plaintiff and members of the Sufficient Funds Class and New Jersey Sufficient Funds Subclass for refunds and all other relief available under the law.

COUNT II

Violation of the New Jersey Consumer Fraud Act ("NJCFA")
(N.J. Stat. §§ 56:8-1 *et seq.*)

(On Behalf of Plaintiff, the Sufficient Fund Class,
the New Jersey Sufficient Fund Subclass, and the EFTA Class)

67.    Plaintiff incorporates the above allegations by reference.

68.    Defendant's overdraft fee practices violate the NJCFA because they are misleading in that, *inter alia*, they conflict with Defendant's written representations concerning its overdraft fee policy and CUNJ's "available balance" calculations are opaque and confusing to its members.

69.    Defendant's overdraft fee practices violate the NJCFA because they are unfair and outside the norms of reasonable business practices in that, *inter alia*, Defendant assesses overdraft fees on transactions that do not overdraw a consumer's settled account balance and Defendant authorizes and settles transactions in fee-maximizing sequence. Such practices victimize the average consumer.

70.    Defendant's overdraft fee practices violate the NJCFA because they violate Regulation E in that Defendant charges overdraft fees for ATM and debit card transactions without having previously obtained the account-holder's affirmative opt-in consent.

71.    Plaintiff and members of the Classes suffered ascertainable losses, namely one or more $30 overdraft fees, as a result of Defendant's unlawful conduct.

72.    As such, Defendant is liable to Plaintiff and members of the Classes for a refund of all unlawful overdraft fees, treble damages, and all other relief available under the NJCFA.

COUNT III

Violation of Electronic Funds Transfer Act
15 U.S.C. § 1693 *et seq.*

(On Behalf of Plaintiff and the Unauthorized Overdraft Fees Class)

73.     Plaintiff incorporates the above allegations by reference.

74.     Defendant failed to obtain affirmative opt-in consent from Plaintiff and members of the Unauthorized Overdraft Fees Class prior to assessing overdraft fees for ATM and/or one-time debit card transactions, in violation of Regulation E, 12 C.F.R. § 1005.17.

75.     Defendant violated the requirements of Regulation E by imposing overdraft fees on ATM and one-time debit transactions notwithstanding its prior failure to do one or more of the following:

a.      provide EFTA Class members with a notice describing its overdraft services that complies with 12 C.F.R. §§ 205.17(b)(1)(i), (d);

b.      provide EFTA Class members with a reasonable opportunity to affirmatively consent, or opt in, to overdraft services in accordance with 12 C.F.R. § 205.17(b)(1)(ii);

c.      obtain EFTA Class members' affirmative consent, or opt-in, to overdraft services in accordance with 12 C.F.R. § 205.17(b)(1)(iii); or

d.      provide EFTA Class members with confirmation of their consent in accordance with 12 C.F.R. § 205.17(b)(1)(iv).

76.     As a direct and proximate result of Defendant's failures, Plaintiff and members of the Unauthorized Overdraft Fee Class suffered harm, including the imposition of one or more unauthorized overdraft fees.

77.     As such, Defendant is liable to Plaintiff and members of the EFTA Class for actual damages, statutory damages, and all other relief available under EFTA.

## VII.      DEMAND FOR TRIAL BY JURY

78.     Plaintiff demands a trial by jury of all issues in this action so triable.

## VIII.      PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.      For an order certifying this action as a class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

b.      For actual, statutory, and treble damages on all applicable claims in amounts to be proven at trial;

c.      For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

d.      For an order enjoining the wrongful conduct alleged herein;

e.      For other appropriate injunctive and other equitable relief;

f.      For pre-judgment and post-judgment interest;

g.      For attorneys' fees and costs as provided by statute or otherwise;

and

h.      For such other relief as the court deems just and proper.

Dated:      May 17, 2023                    Respectfully submitted,

                                            MYASIA LOPEZ, on behalf of herself and
                                            all others similarly situated.

                              By:      */s/James A. Francis*
                                       James A. Francis
                                       Jordan M. Sartell*
                                       FRANCIS MAILMAN SOUMILAS, P.C.
                                       1600 Market Street, Suite 2510
                                       Philadelphia, PA 19103
                                       T: (215) 735-8600
                                       F: (215) 940-8000
                                       jfrancis@consumerlawfirm.com
                                       jsartell@consumerlawfirm.com

                                       *Attorneys for Plaintiff*

                                       * *pro hac vice* application forthcoming